I'm Howard Rosen on behalf of the appellants. I will try to make my argument brief and to the point. The reason I think this argument may be brief is that this case is actually controlled by decision of this court in Valcourta. In Valcourta, the employee sought a penalty under Labor Code Section 203 because he claimed that he did not receive his pay timely under California Labor Code Section 201.5. This court found that that claim was a minimum labor standard, a non-negotiable right protected by California law. Here, in this case, the employee is seeking the extra compensation for meal period and wage periods under Labor Code Section 226.7b. Now, the reason that those sections are so important is it is Labor Code Section 219 that says that no provision of Labor Code Section 200 to 243 may be contravened or set aside by private agreement. The collective bargaining agreement between the union that represents these employees and Ivy Hill cannot set aside that minimum non-negotiable labor standard, nor does Section 301 preempt that Labor Code section. Valcourta made that very clear. So it's our position that simply stated the district court was just in error. This case arises under a motion for summary judgment. There's no dispute as to the facts. All we're seeking is that we can proceed on our State law claim in State court independent of any language in the collective bargaining agreement. The collective bargaining agreement simply does not need to be addressed, does not need to be interpreted. And for that reason, I ask the Court to reverse the judgment of the district court with instructions to remand the case to the State court. Also, I might note that there is no issue with respect to the rest break. The rest break is not even mentioned at all in the collective bargaining agreement. And even if this Court were to find that the meal periods were somehow preempted, the rest break is not addressed at all. And for the Court to exercise supplemental jurisdiction and then dismiss that claim was totally an abuse of discretion because there's an independent claim not arising under the collective bargaining agreement at all with respect to the State statute about rest breaks. Thank you very much. Thank you, counsel. Thank you, Your Honors. I'll try to also be brief, but perhaps not quite as brief as Mr. Rosen. Could you just take one minute on the rest break? It's a little puzzling with district court decision. I'll be brutally frank. I'm confused, too. The motion, as we viewed the complaint, Your Honor, there were two – there was one cause of action, there were two distinct claims, the meal period and then the rest period. Factually, when we looked at the meal period, we didn't find that there was a consistent practice under the contract or there was provisions governing it. We found that some people got breaks at set times, some people took them at irregular times, and there was no uniformity of fact that I could put together to argue preemption. The meal periods, however, were a vastly different – a vastly different issue, and the rest periods, there was no uniformity of fact. Yeah. I have to be frank. We did not move for summary judgment on the rest periods. And I spoke with Mr. Rosen after the court granted judgment and he made a motion for clarification. Correct. And the clarification – Never did anything. The clarification was it covered the whole complaint. And at that point, we were out of that court. If I can just address what I think is the central issue in this case, and that is whether this is, in fact, a non-waivable State right. And I'd refer to Miller v. AT&T, which talks about a non-waivable State right, and it says there that a right is non-negotiable if the State law does not permit it to be waived alienated or altered by private agreement. Later on, this Court states that there's three tasks. One was whether the collective bargaining agreement contains provisions that govern the issue. The second is whether the State law articulates a standard on that issue. And the third is whether the State has shown an intent not to allow its prohibition to be altered or removed by private contract. Now, in this case, we have an instance where, when the meal period provisions were passed, the State legislature also passed a blanket exemption from that requirement. You're talking about the sections in the 500 series? Correct, Your Honor. Okay. There were meal periods provided before then by the Industrial Welfare Commission orders, right? That's correct, Your Honor. Yeah. And I think the practice — whatever the practice was then, there was no penalty provision prior to the inaction of the 500 series labor codes. So the issue of collective bargaining preemption, quite frankly, did not arise very often. The only remedy was injunction until the adoption in the 200 series the year after the 500 series, right? I'm sorry? I said the penalty provision is in the 200 series, right? Well, I think that the penalty provisions were actually put into the wage orders at some point, and then after they were put into the wage orders, the legislature put this into 226, but it didn't remove the blanket exemption. And that's not even permitting a waiver. That just says if you have a collective bargaining agreement, you're exempted from the meal period provisions, regardless of whether there's a provision in the collective bargaining agreement which addresses the meal period or not. We'll get to that part later, what happens with the — but I'm just trying to get the orders straight. First, we had the Industrial Welfare Commission orders, which provided for the meal periods. Correct, Your Honor. And then the legislature passed the 500 series next in 2000 — I think October 2000 was it? If I might, Your Honor, the meal period provisions were always in the wage orders, but there was no penalty provision. Right. That's right. No, no. The meal period provisions were the first. They came — they've been here since the 40s or the 50s, whenever. Correct, Your Honor. And they've covered everybody. And then AB60 instituted the restoration of the 8-hour workday, the meal period and rest period penalties, and the blanket exemption, all in that one package.  I believe they were authorized in — No, I think they were just — the requirements were codified in the 500 series, but the penalty came in the 200 series, didn't it? No, Your Honor. I believe they were first authorized in the 500 series. I could be in error there. Yeah. And then they were later — the legislature later added 226.7, so that where those — where the Industrial Wealth Commission put in the penalty provisions, they were authorized to do it. I think it was sort of an after-the-fact fixing of what it saw as a problem. Okay. And then after all of that came the — what they called the clarification of the 500s. Yes. Correct, Your Honor. It says that it had always been the intent that the exception of employees in collective bargaining did not apply to the meal periods. Well, I think that's a little bit disingenuous, not on your part certainly, but on the part of the legislature, because even the DLSE opinion memorandum acknowledges that there was a blanket exemption until January 2002. And I don't know how you can ignore the plain statutory language which says that this provision doesn't apply. And I think the DLSE acknowledges that prior to January 1, 2002, there was no basis for imposition of these penalties under collective bargaining agreement. And what its opinion letter states is that the revision of the 500 series, which was effective January 1, 2002, did not intend to alter any IWC orders. So I don't know how to make sense of all that, but — Well, it's not easy to make sense of all of this. I mean, you've got the — you've got a number of statutory provisions, some of which might appear to conflict. I'd say that's correct, Your Honor. And I think that the fact that the State law has such conflict and permits the meal period provision to be altered in any number of ways, depending on which wage order, which industry, and which time period you're looking at, I mean, you didn't even have to have a waiver prior to January 1, 2002. But the question, I guess, that I have, and I think you alluded to it earlier, is that under the statutes that the waiver has to come from the commission, right? If an industry is going to get a waiver, it has to be granted to it by the commission. And if that's the rule, then I don't understand how you can just do it yourself in a CBA. I think that that — that the premise that you've stated is not correct, and I'll try to explain why I believe that. If the right is non-waivable or non-negotiable, there's a difference between rights conferred by statute which are negotiable and those which are non-negotiable. And those which are non-negotiable are defined by this Court's precedence as those which are not permitted to be altered by private agreement. And I would submit that, plainly, the history of the meal period provisions here, to this day, it allows alterations of the requirement. In some instances, the wage orders say that a union can waive the provision if the employees work six hours. In some industries, it says that if the employees are covered by a collective bargain agreement, they are exempted. I don't see how that helps you. I mean, what you're saying is that there are specific waivers permitted in certain things. Some industries aren't covered. Some — some, you can — you don't have to pay the lunch period if it's only a six-hour week. And some, you're allowed to have a delayed lunch period. All those are very specific provisions. How does that help your argument that you can, therefore, have any kind of agreement you want? Because the fact that those — that this requirement is permitted to be altered by private agreement means it is not a nondegotiable right and, therefore, can be waived in a collective bargain agreement. It's allowed to be — it's allowed to be altered in certain specific respects the legislature specifies. How does that get you to the theory that you can, therefore, alter it in any way you want? Because the definition of the nondegotiable right as contained in Miller v. AT&T, which is cited in the brief, but it's 850F2nd. It's at 546. It says a right is nondegotiable if the State doesn't permit its alteration. So the State permits its alteration. An example. Historically, there have always been some industries that have been exempted from this. Let's take a statute that says everybody has a minimum wage except coal miners. If coal miners want to agree that they can have a different system, that's okay. But everybody else in the State is subject to the minimum wage. Under your theory, that would mean the minimum wage is something that's negotiable for everybody. It's a waivable right because you've let out one industry? I think the analogy is inapt. Because I think if you wanted to have a similar analogy, you'd say, well, in wage order number one, they can work for 10 percent below the minimum wage. Don't tell me it's inapt. Answer the question. Under your theory, would that be the case? Because you can alter it for one industry. I think that's a closer question, but it's a different question than the one we're facing here. Here we have an entire. I'm trying to find the legal theory. The legal theory, as I understand it, is your legal theory is if you can alter any part of it, then therefore it's waivable. It's not a non-waivable right. Right. I would say in this case there's widespread alteration permitted by private agreement expressly in all the wage orders. Every single wage order has a provision for obviating the meal period or amending the requirement. And that's very different where there's one one section or one industry spelled out. OK. I mean, I think that's that's how I see the distinction. The hypothetical you posed is a much closer question. And it's not one that I've analyzed fully, but I think it's a very different question than the one here where, you know, six months or 10 months prior to this action being filed, we didn't even need a. Let's assume they have the kind of exemption that they have. Let's assume you say everybody's entitled to a lunch period, except in an industry where shutting down for that period would cause extensive disruption. Then you can modify it. Now, would that mean it's therefore a waivable right for all employees? I think it's a factually dependent circumstance. I mean, I think you have to look at the entire history of how the legislature has treated the right at issue. And here the legislature has not treated this as a non-negotiable right. They've exempted not only a single industry, but everybody with a collective bargaining agreement, regardless of whether that agreement contained a waiver or not. Where do they do that? Which statutory provision? It was originally in Section 5 when they first passed the 500 series of laws. Was it in 514? When initially passed until amended in effect of January 1, 2002, said that this chapter, which included the meal period requirements, does not apply to an employee covered by a collective bargaining agreement if the agreement expressly provides for the wages, hours of works, et cetera, et cetera. It was later clarified to mean only with respect to overtime. It was later amended and altered. I mean, because it clearly contained, I mean, it clearly contained, clearly applied to the meal period statute, which was contained within Sections 500 and 558. It was at 512. And I don't even think the DLSE disputes that prior to January 1, 2002, there was a blanket exemption for collective bargaining, employees covered by a collective bargaining agreement, regardless of whether or not it contained an explicit waiver. Well, 1208 says that it was to clarify that from the beginning that's what it meant. Now, maybe you think they can't do it, but there's not much doubt that that's what they intended to do. Well, I mean, I think that that language is something which is often included in the process of legislation. But I don't think – I don't see how you can say that that clarifies it, because it indisputably alters it. Before, it said everything here is exempted. And here it's saying, well, if it was clarification, then – I mean, they changed the substantive right. They changed the scope of the exemption by altering the language. I think the plain reading of the words shows that they did that. Okay. Well, there are two different arguments. I mean, one is that they didn't do that, and that's what I thought you were arguing initially. But what you're saying is you think that their attempt to clarify, to say what the bill meant from the beginning, is invalid. They did not – they tried to do that, but you're saying it's unlawful. No, I'm not saying it's unlawful. Substantively, it's not. It's just factually incorrect. I mean, before – Well, I mean, what does that mean when a statute is factually incorrect? The statute says a coal mine is a pit that has marbles in it. Now, that may be factually incorrect, but if it's the law, it's the law, unless it's – the law is invalid. Well, I think that if you're going to apply the exemption to a case prior to January 1, 2002, it specifically stated that this chapter does not apply to an employer covered by a valid collective bargaining agreement. And regardless of what a subsequent legislator said, you know, said they intended, I think the words are clear on their face, and it would be an error to construe that not to include a waiver or an exemption of all the – of all the code sections in that chapter. I mean, you simply couldn't construe this – you cannot construe 512 as initially passed not to include Section 512. This may or may not be relevant, but did the composition of the legislature change in the interim between the enactment of the two statutes? Well, inevitably, there's some change. I haven't analyzed – I haven't analyzed that. But even if the composition was the same, I mean, you can't sit there and pass an explicit – a clear and explicit exemption and then say a few years later, oh, you know what, we were just kidding. We didn't mean that. What we really intended was something which is quite antithetical to the words which we passed into law, because employers have to rely on this. And this employer was aware of this exemption. Well, the problem, I suppose, and that's why I asked you before, wasn't it – wasn't the state of the law after they passed the 500 series in some state of confusion because of various provisions giving rise to these wage orders? I would argue not, Your Honor, because clearly if there's an exemption in the statute, it would be – any provision in a wage order passed by a regulatory agency which was violative of the statute would be rendered nugatory. I mean, you can't have the IWC passing wage orders which directly conflict with a statute passed by the legislature. If the IWC and the California State Legislature were equal bodies, then I guess you'd have a conflict of law, but here you have an administrative agency which is clearly subordinated to state law – I mean, to the state legislature, and you have actions by the state legislature to alter the existing state of the law, and you have opinion letters from the DLSC which state prior to January 1, 2002, there was an exemption for collective bargaining. But there wasn't a prohibition in Section 500. 500 didn't say no employer may pay a meal period. What the – what it said was an employer is required to do these things. Now, the problem is there were duplications. They did this even before they had this statute. This statute codified what was already an existing practice of having the wage order which was adopted pursuant to other provisions, not pursuant to the 500 series. So you had from way back, as we said, to the 50s or 40s, you had these meal periods required by the state. They were required by an IWC order which was authorized by the general provisions. Then you got the 500 series which seemed to codify the duty, but it said that what they were – what they were putting into the 500 series didn't bind employers with collective bargaining agreements. Now, that leaves you with two issues then. One, does that mean that the orders otherwise authorized are no longer valid? And two, if it did mean that and they didn't intend that, does the clarification pass saying they didn't intend that? Is that an invalid clarification? Well, Your Honor, as you know, the – administratively, the Labor Commissioner had a lot of exemptions which it – in policy, it applied to employees covered by collective bargaining agreements. And I think – I don't – I think the answer probably is that as passed, AB60 was intended to kind of restore the status quo. And it took note of the fact that with respect to a lot of – a lot of issues under – under where the employees were covered by the collective bargaining agreement, the State Labor Commissioner declined to enforce certain provisions under the belief that a comedy with Federal labor law required that kind of conduct. And I still think you have to look at what the legislature did in enacting AB60 and exempting – you know, exempting the employees covered by the collective bargaining agreements and in continuing to permit all these alterations or obliterations of this – of the meal period. And I think that under that fact pattern, it's simply erroneous to say that it's a non-negotiable right because, you know, there's any number of circumstances where it can be changed. Okay. The question here is whether we have to look at the CBA or interpret the CBA in order to decide this case. The language in the CBA says the exact same thing as the State law. If you work five hours, you have to give them 30 minutes. But it also permits – it's Section 11.1 of the CBA. And it's noted in my brief. I don't – well, I can't read it to you. But it also permits employees to work through their meal periods. And – It says the State law. They can work – No, no. There's two provisions, Your Honor. There's one which says the State law and there's one which permits them to work through it. Two separate provisions in the CBA. It's – this thing is 35 years old. And the collective bargaining agreement has been construed since its inception to permit working meal periods. And Appellant Vallis conceded that for 16 years he's worked at the plant and they have always worked through their meal periods. And, in fact, this is – I thought that stopped in 1999 with the change in the type of press that you used. They can – it was their practice to work through the meal periods and it was popular with the employees because they were then compensated for being on site. And this dispute actually arose when the company started making people clock out and it made employees unhappy. That's simply how it arose. So the processes may not have required them to do that, but the practice under the collective bargaining agreement was always to uniformly work through the lunch period until June of 2002. Thank you, counsel. Thank you. Thank you. Judge Wardlaw, I'd just like to answer the last question that you posed to Mr. Johnson. The employees for more than 30 years worked from the time they clocked in to the time they clocked out, straight through, did not have a lunch period. In other words, did not have a 30-minute uninterrupted lunch period, did not clock out, had continuous work time. There's no dispute about that. And then what happened in June 2002 – no, January 2000 and – June, excuse me. June 2002, the company changed its practice. And Mr. Johnson's right. The employees were upset about that because then they were forced to clock out, take that 30 minutes off the clock, and then this lawsuit resulted shortly thereafter. But what we haven't heard in response by the appellants is the argument about 219. Now, the penalty provision – we don't even have to address the 500 series. As Judge Reinhart noted, the penalty is actually in 226.7b. That's the section of the Labor Code that says if you're not provided the meal and rest periods under a wage order of the Industrial Welfare Commission, then you have to be paid an extra hour of compensation each day for each meal period, for each rest period. And it's 226.7b that's protected by Labor Code Section 219. So regardless of what this discussion about the 500 series and when companies were covered or whether they weren't, from October 2000 to the present, all employers are covered by 226.7b. Well, wasn't 226.7b, I thought, was effective January of 2001? It was enacted – at least a copy of it went in October 2000. That's been enacted, but effective, if I recall, the legislative system. All right, I might be wrong by a few months. If it's not October 2000, it's January 2001. I don't think that's the difference here in this case. Well, no, but it may go to the remedy. I mean, the order effective October 2000 of the Industrial, what IWC, the added new penalty provisions into the order on October of 2000. Section 226.7, which codified penalties, was effective January 2001. If you were to prevail on the case, there's a question whether you would prevail back to October 2000 or January 2001. That's not an issue we obviously have to decide today because this case – You may not. We would have to, wouldn't we? No, no, this Court will never have to decide that. That's right. You're right. We don't have to. Because if this case is remanded, if the district court was wrong about the preemption, then there was no Federal jurisdiction because the only jurisdiction asserted was the complete preemption doctrine. So what happens procedurally, this case is remanded, it goes to the district court, the district court had no original jurisdiction, there's no preemption, it gets remanded to the state court, and lucky for this panel, it's the state court's problem to sort out how far back we can go to recover. Yeah, that's the best news I've heard all day. With that, I'll stop. Thank you very much. Thank you both very much. It's certainly not a very clear or easy case, and the argument's been helpful. Thank you. Thank you. The next case for oral argument is, if I didn't say it, that case is submitted. The next case for oral argument is Gonzales-Castro v. Ashcroft. Thank you.
judges: Reinhardt, Hall, Wardlaw